FILED

2023 Sep-29  AM 11:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ONOMATOPOEIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-00001-SGC |
| | ) | |
| STEWART TITLE GUARANTY | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Onomatopoeia, LLC, initiated this matter against CHL

Investments, LLC, and Stewart Title Guaranty Company by filing an interpleader

complaint under Rule 22 of the *Alabama Rules of Civil Procedure* in Jefferson

County Circuit Court on October 21, 2022.  (Doc. 1-1 at 4-11).[2]  After it was added

by amendment, CHL Investments, LP,[3] removed to this court on the basis of federal

diversity jurisdiction.  (Doc. 1).  Presently pending are three motions: (1) CHL's

motion to dismiss (Doc. 4); (2) Onomatopoeia's motion to remand (Doc. 10); and

(3) Onomatopoeia's motion to strike (Doc. 11).  The motions are fully briefed and

---

[1] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c).  (Doc. 17).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system, and appear in the following format: Doc. __ at __.

[3] The Clerk of Court is **DIRECTED** to correct the docket sheet, which currently lists CHL as a limited liability company.  (*See* Doc. 1 at 1).

ripe for adjudication.    (Docs. 8-9, 14-15, 19-20).    As explained below, Onomatopoeia's motions will be denied, and CHL's motion will be granted.

## I.    BACKGROUND

This lawsuit arises from a failed transaction in which CHL agreed to purchase from Onomatopoeia real property located in Arkansas.  (*Id.* at 7).  Included in the original complaint was Onomatopoeia's demand for $75,000 in escrow funds, which CHL had deposited with the escrow agent, Stewart Title.  (*Id.*).  The agreement describing the terms of the transaction ("Sales Contract") provided the escrow funds would go to Onomatopoeia should CHL fail to close the transaction; in the event of a dispute regarding entitlement to escrow funds, the Sales Contract provided Stewart Title could interplead any disputed funds "into court."  (*See id.* at 7-8; Doc. 8-2 at1).  The complaint asserted Onomatopoeia's entitlement to the escrow funds under a variety of state law theories; as discussed in more detail in the following section, it also asserted a right to contract damages and recovery under a variety of tort theories. (Doc. 1-1 at 8-10).

The complaint anticipated that Stewart Title would make no claim to the escrow funds and would instead "readily and happily tender the disputed funds . . . and, presumably, [] immediately thereafter request to be excused from further proceedings consistent with Rule 22."  (Doc. 1-1 at 8).  The complaint also voiced Onomatopoeia's anticipation that it would consent to Stewart Title being excused

from further proceedings.  (*Id.*).  Indeed, the *ad damnum* clause included a request for an order requiring Stewart Title to interplead the funds and then excusing Stewart Title from further participation in the litigation.  (*Id.* at 10).  Stewart Title appeared and filed a motion seeking to interplead the earnest money and be dismissed from the lawsuit.  (*Id.* at 37, 43-44).  Stewart Title's motion also sought attorney's fees and reimbursement of $650 in fees it paid to a non-party title company.  (*Id.* at 44).  Onomatopoeia subsequently filed an Amended Complaint adding CHL Investments, LP, as a defendant.  (*Id.* at 48-55).[4]  Aside from identifying CHL as a limited partnership, the Amended Complaint is a verbatim replica of the original.[5]

CHL, after removing to this court on the basis of diversity, filed its motion to dismiss for lack of personal jurisdiction.  (Docs. 1, 4).  Thereafter, Onomatopoeia filed a motion to remand (Doc. 10) and a motion to strike (Doc. 11).  The remaining relevant facts are set out below, in conjunction with the pending motions to which they apply.  First, however, the court will address the matter of subject matter jurisdiction.

---

[4] The Amended Complaint also retained CHL Investments, LLC, as a defendant.  (Doc. 1-1 at 48).  The state court subsequently granted the plaintiff's motion to dismiss any claims against the LLC.  (*Id.* at 86).

[5] The Amended Complaint, filed after Stewart Tile appeared and filed its motion to interplead in state court, including Stewart Title's request for attorney's fees and reimbursement, reflected the same assumptions and requested the same relief: Stewart Title's early dismissal following interpleader.  (Doc. 1-1 at 52-53, 55).

## II.   SUBJECT MATTER JURISDICTION

A federal court has an independent duty to ensure it has subject matter jurisdiction.  *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Accordingly, the court can raise the issue of jurisdiction on its own.  *Id.*  When a court considers its jurisdiction *sua sponte*, it should provide the parties notice and an opportunity to be heard.  *See Day v. McDonough*, 547 U.S. 198, 210 (2006).  In cases removed to federal court, the removing party "bears the burden of establishing federal jurisdiction." *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 752 (11th Cir. 2014) (internal quotation marks omitted).

CHL removed to this court on the basis of federal diversity jurisdiction, which requires an amount in controversy over $75,000 and complete diversity of citizenship, such that no plaintiff is a citizen of the same state as any defendant.  28 U.S.C. § 1332.[6]  In the process of evaluating the pending motions, the court recognized potential jurisdictional problems concerning both the citizenship of the parties and the amount in controversy.  Because these issues were not sufficiently addressed on the record, the court ordered the appropriate parties to present evidence and arguments regarding the court's subject matter jurisdiction; the parties have responded.  (Docs. 23-26).  With the benefit of the parties' responses, the court

---

[6] The statutory requirements of diversity jurisdiction apply to an interpleader action brought under Rule 22.  *E.g. Com. Union Ins. Co. v. United States,* 999 F.2d 581, 584 (D.C. Cir. 1993).

concludes it has subject matter jurisdiction over this matter by way of diversity.

## A.   <u>The Parties are Completely Diverse</u>

For purposes of diversity jurisdiction, an individual is a citizen of the state in which he or she is domiciled.  *See Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1267-68 (11th Cir. 2013).  A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).  A limited partnership is a citizen of each state in which its partners are citizens. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96 (1990).   A limited liability company is a citizen of each state in which its members are citizens.  *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). As explained below, the parties here are completely diverse.

The notice of removal describes CHL as a limited partnership whose partners are citizens of California, Arizona, Utah, Washington, Indiana, Michigan, and New York.  (Doc. 1 at 3).  There is no disagreement on this point.  Accordingly, for purposes of diversity, CHL is a citizen of the foregoing states.

The notice of removal describes Stewart Title as a corporation formed under the laws of Texas and having its principal place of business in Texas.  (Doc. 1 at 3). In its motion to remand, Onomatopoeia contends Stewart Title has its principal place of business in Alabama; this contention relies on a printout from the Alabama Secretary of State's website showing Stewart Title has a Mobile, Alabama address.

(Doc. 10 at 11; Doc. 10-1 at 4).  CHL explains the Mobile address listed on the Alabama Secretary of State's website is Stewart Title's *principal Alabama address* but that its *principal place of business* is in Texas.  (Doc. 14 at 3).  CHL's explanation is supported by an affidavit from one of its attorneys, as well as evidence from the Alabama Insurance Commission showing Stewart Title's principal place of business is located in Houston, Texas.  (Doc. 14-2 at 3, 5).  Onomatopoeia's reply does not dispute CHL's explanation.  (Doc. 20).  Under these circumstances, the court is satisfied Stewart Title is a Texas citizen for purposes of diversity.

The notice of removal describes Onomatopoeia as an LLC, the members of which are Alabama citizens.  (Doc. 1 at 2).  Accordingly, the notice of removal alleges Onomatopoeia is a citizen of Alabama for diversity purposes.  (*Id.* at 3).  Onomatopoeia takes issue with this characterization of its citizenship in its motion to remand, insisting it is an "Arkansas entity."  (Doc. 10 at 8).  In response to the court's order (Doc. 23) on this point, Onomatopoeia has submitted evidence showing its "sole owner" is David Carrigan, an Alabama citizen (Doc. 25-1 at 1-2).[7] Accordingly, Onomatopoeia is an Alabama citizen for purposes of diversity

---

[7] In an earlier declaration, Carrigan averred that Onomatopoeia had two members: himself and Hillside Slope, LLC.  (Doc. 8-1 at 2).  In the most recent declaration, Carrigan avers his earlier statement regarding Hillside Slope was incorrect because Hillside Slope dissolved on December 29, 2022, just before removal to this court.  (Doc. 25-1 at 1-2).  In any event, prior to Hillside Slope's dissolution, Carrigan was its sole member, meaning it too was an Alabama citizen.  (*Id.*).

jurisdiction.[8] Finally, in the motion to remand, Onomatopoeia contends realignment of the parties would destroy diversity. (Doc. 10 at 12).   However, because none of the parties have overlapping citizenships, they are completely diverse regardless of alignment.

For the foregoing reasons, the court is satisfied the parties are completely diverse.

**B.**   <u>**The Amount in Controversy Exceeds $75,000**</u>

To determine the amount in controversy, courts first look to the complaint. *Williams v. Best Buy Co*., 269 F.3d 1316, 1319 (11th Cir. 2001).  If the amount in controversy cannot be determined from the face of the complaint, courts look to the notice of removal and other relevant documentation.  *Pretka*, 608 F.3d at 754-55. Where the complaint does not plead a specific amount of damages, "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement."  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (alteration incorporated).

---

[8] Interestingly, Carrigan's affidavit continues to describe Onomatopoeia as an "Arkansas LLC," apparently because it was organized under Arkansas law and maintains its principal place of business in Hot Springs. (Doc. 25-1 at 2; *see id.* at 1).  As noted above, an LLC's citizenship is derived from the citizenship of its members.  Accordingly, for purposes of diversity jurisdiction, Onomatopoeia is a citizen of Alabama only. *E.g. McKeithen v. Wal-Mart Stores East, LP*, No. 22-215, 2022 WL 2080861, at *1 (S.D. Ala. *entered* June 9, 2022) (place of formation and principal place of business are irrelevant to LLC citizenship). However, even if Onomatopoeia were an Arkansas citizen, it would not destroy diversity because neither defendant is a citizen of Arkansas.

The court initially read the Amended Complaint as asserting CHL's claim to only the $75,000 in escrow funds. While the Amended Complaint mentions tort and quasi contract theories of recovery, the court interpreted the inclusion of these terms as providing the basis for Onomatopoeia's entitlement to the escrow funds. (*See* Doc. 1-1 at 54-55). Based on this interpretation and because diversity jurisdiction requires an amount in controversy exceeding $75,000, the court ordered CHL to show cause why this matter should not be dismissed as one penny short of the jurisdictional threshold. (Doc. 24).[9] CHL's response convinces the court the jurisdictional threshold is satisfied here.

CHL persuasively argues that the Amended Complaint is not strictly limited to the escrow funds. First, CHL points to Onomatopoeia's demand, in addition to the earnest money, for funds it "is entitled to for the loss of the benefit of the Seller's bargain and the costs associated with 'covering' or attempting to 'cover,' including, general, consequential and special damages." (Doc. 26 at 3-4; *see* Doc. 1-1 at 54). Thus, the Amended Complaint can be read as including a claim for contract damages beyond the amount in escrow. This pushes the amount in controversy across the $75,000 threshold without the need to look beyond the Amended Complaint. *See Williams*, 269 F.3d at 1319. Similarly, CHL has convinced the court that inclusion

---

[9] The order to show cause also invited Onomatopoeia to respond. (Doc. 24 at 3). Onomatopoeia declined that invitation.

of tort and quasi contract theories in the Amended Complaint should be read in conjunction with its statement that, in addition to breach of contract, the facts support "substantial claims" sounding in tort. (Doc. 1-1 at 53). While any additional claims in the Amended Complaint are conclusory and insufficiently pled, they nonetheless factor into the court's jurisdictional analysis. *See McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731 (11th Cir. 2014).

For the foregoing reasons, the court is satisfied the amount in controversy exceeds the $75,000 jurisdictional threshold.[10]   Having determined the court's subject matter jurisdiction, the pending motions are addressed in turn.

## III.   MOTION TO REMAND

Congress has provided that a defendant may remove a state court case to federal court if federal courts have original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). The removing party bears the burden of proving federal subject matter jurisdiction. *Williams*, 269 F.3d at 1319-20. Federal courts strictly construe removal statutes and resolve all doubts in favor of remand. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-30 (11th Cir. 2006), *abrogation on other grounds recognized by Dudley v. Eli Lilly and Co.*, 778 F.3d 909 (11th Cir. 2014).

Onomatopoeia asserts four grounds in support of remand: (1) failure of

---

[10] Although invited to do so, Onomatopoeia chose not to respond to the show cause order regarding the amount in controversy. Accordingly, the court need not consider how the question of remand might change if Onomatopoeia had declared it would not accept more than $75,000 in damages.

unanimity; (2) deficiencies in a declaration filed by CHL; (3) failure of the removal sequence; and (4) lack of diversity.  (Doc. 10).  Each ground is addressed in turn. This opinion does not address all of the arguments contained in the briefing, instead focusing only on the facts and law necessary to resolve the many issues presented.

### A.   Unanimity

The so-called "rule of unanimity" requires that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).[11]  The majority view in the Eleventh Circuit is that "the mere assertion in a removal petition that all defendants consent to removal fails to constitute sufficient joinder."  *Beard v. Lehman Bros. Holdings*, 458 F. Supp. 2d 1314, 1319 (M.D. Ala. 2006); *see also Ala. Mun. Workers Comp. Fund, Inc. v. P.R. Diamond Prod., Inc.*, 234 F. Supp. 3d 1165, 1168 (N.D. Ala. 2017) (allegation of consent is insufficient to constitute joinder; collecting intra-Eleventh Circuit district court cases).  Any defendant required to consent must do so within the 30-day removal period.  *Holder v. City of Atlanta*, 925 F. Supp. 783, 785 (N.D. Ga. 1996).

---

[11] In 28 U.S.C. § 1441(a), Congress provided:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Here, Onomatopoeia contends remand is required because this case was removed under § 1441(a) and Stewart Title failed to timely consent to removal. (Doc. 10 at 2-4). CHL was served with the Amended Complaint in state court on December 2, 2022, after Stewart Title had already been served and had appeared. (Doc. 1-1 at 76; *see id.* at 37). CHL removed on Monday, January 2, 2023; because the courthouse was closed in observance of New Year's Day, the Clerk of Court entered the removal papers and assigned a case number the following day at 4:49 p.m. (*See* Doc. 1 at 1). Meanwhile, Stewart Title filed its consent to removal on January 5, 2023. (Doc. 2). Accordingly, Onomatopoeia contends removal was improper because Stewart Title's consent was filed two days late. (Doc. 10 at 2-4).

CHL makes several arguments in response, but this opinion only addresses one dispositive argument: Stewart Title's consent to removal was not required because it is a nominal party. (Doc. 14 at 7-12). While § 1446(a) requires all defendants to join in removal, "nominal or formal parties, being neither necessary nor indispensable, are not required to join in the petition for removal." *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Loc. 349*, 427 F.2d 325, 326-27 (5th Cir. 1970).[12] "The test of whether or not a named defendant is a nominal party is if his role in the lawsuit is that of a depositary or stakeholder." *Id.*

---

[12] Fifth Circuit decisions rendered prior to September 30, 1981, are binding precedent in this Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

(quotation marks omitted).  Stated another way, whether a particular party is nominal depends on "whether, in the absence of the defendant, the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff."  *Id.* at 327. (punctuation omitted)

Here, Stewart Title merely holds the earnest money.  The primary controversy concerns whether CHL or Onomatopoeia is entitled to the escrow funds, to which Stewart Title makes no claim.  To the extent the Amended Complaint asserts—or attempts to assert—other claims, they are not aimed at Stewart Title.  In response to these arguments, Onomatopoeia contends: (1) amendments to § 1446 contained in the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA") undermine the pre-JVCA cases CHL cited in support of the nominal party exception; and (2) Stewart Title is not a nominal party.  ((Doc. 20 at 6-9).  These arguments are addressed briefly in turn.

First, to the extent Onomatopoeia contends pre-JVCA cases are no longer persuasive, the argument fails.  Indeed, in enacting the JVCA, Congress merely intended to codify the pre-existing rule of unanimity.  *See Penson Fin. Servs., Inc. v. Golden Summit Invs. Grp., Ltd.*, No. 12-300, 2012 WL 2680667, at *5 (N.D. Tex. July 5, 2012); *see Watson v. Gen. Elec., Inc.*, No. 12-2661, 2012 WL 5931884, at *7 (N.D. Ala. Nov. 26, 2012).

Onomatopoeia next argues Stewart Title is not a nominal party because it: (1)

holds the escrow funds; (2) seeks an order allowing it to tender the funds into court; and (3) seeks attorney's fees and costs.  (Doc. 20 at 7-8).  Neither Stewart Title's status as the escrow agent nor its request to interplead the escrow funds somehow renders it a party to the real controversy.  Interpleader allows an innocent and disinterested stakeholder to have a court determine the rightful owner of the *res*.  *In Re Mandalay Shores Co-op. Hous. Ass'n, Inc.* 21 F.3d 380, 383 (11th Cir. 1994).  A successful interpleader results in discharging the stakeholder of any liability once the asset is turned over to the court and all legal obligations to the asset's claimants are satisfied.  *Id.*  Similarly, a request for attorney's fees does not strip a mere stakeholder of its nominal party status.  *See Wachovia Bank, NA v. Ming Tien*, No. 04-20834, 2006 WL 8433228, at *4 (S.D. Fla. Dec. 5, 2006); *Morgan Stanley v. Mejia de Del Corral*, No. 18-22749, 2019 WL 5291009, at *2–3 (S.D. Fla. July 9, 2019), *R&R adopted by* 2019 WL 5290860 (S.D. Fla. July 25, 2019).  Indeed, Onomatopoeia's Amended Complaint—the operative pleading here—anticipates that Stewart Title would be a disinterested stakeholder and be dismissed without objection early in the litigation; as relief, it specifically requests Stewart Title's dismissal once it interpleads the funds.  (Doc. 1-1 at 52-55).[13]

---

[13] Tellingly, Onomatopoeia's description of Stewart Title as a disinterested stakeholder in the Amended Complaint came after Stewart Title appeared in state court and moved to interplead the escrow funds; Stewart Title's motion in state court included its request for attorney's fees and reimbursement.  (Doc. 1-1 at 44).

For the foregoing reasons, Stewart Title is a nominal party, and its consent to removal was not required.

### B.   **Deficient Declarations**

Next, Onomatopoeia challenges declarations CHL attached to its notice of removal and its motion to dismiss.  (Doc. 10 at 4-8).  Specifically, Onomatopoeia takes issue with the declarations of Craig Lewis on the grounds that they are: (1) undated; (2) neither verified nor notarized; (3) not based on personal knowledge; and (4) factually incorrect.  (*Id.*).  These are also the grounds on which Onomatopoeia moves to strike the declarations.  (Doc. 11).

As an initial matter, it appears Craig Lewis's declaration ("Declaration") and second declaration ("Second Declaration") filed on the record are not the same versions—or are incomplete versions—of the declarations CHL served on Onomatopoeia.  Onomatopoeia's motion to remand takes issue with the form of the declarations, as well as specific statements Lewis made therein.  (Doc. 10 at 4-6).  However, the First Declaration filed in the record includes only a blank and mostly blank pages.  (Doc. 1-2).  The Second Declaration—attached to CHL's motion to dismiss—got off to a better start, as the first two pages include factual assertions in numbered paragraphs; however, the third page is mostly blank.  (Doc. 4-1 at 2-4).[14]

---

[14] An exhibit to the Second Declaration, purported to be the Sales Contract, consists of blank pages except for a plat map.  (Doc. 4-1 at 6-10).  The Sales Contract appears elsewhere on the record as an exhibit to Onomatopoeia's opposition to CHL's motion to dismiss.  (Doc. 8-2).

In any event, it appears the fourth time was the charm.[15]   Craig Lewis's fourth declaration (the "Fourth Declaration"), attached to CHL's opposition to Onomatopoeia's motion to remand, appears to be complete.  (Doc. 14-1).

The Fourth Declaration remedies many of the supposed technical defects identified by Onomatopoeia.  It is dated and signed under penalty of perjury.  (Doc. 14-1 at 5).  Likewise, the Fourth Declaration includes the recitation—apparently lacking in earlier iterations—that the statements therein are "true and correct."  (*Id.*; *see* Doc. 10 at 7).  That leaves only Onomatopoeia's contention that the declaration is factually incorrect; this argument is based on the First Declaration's apparent description of Onomatopoeia as an Alabama entity.  (*See* Doc. 10 at 7-8).  As discussed above, the court has already determined that Onomatopoeia is an Alabama citizen for diversity purposes.  Accordingly, to the extent Onomatopoeia moves to strike portions of the declarations as untrue, the request will be denied.  (Doc. 11).  Likewise, any problems with the declarations do not require remand.

## C.     Removal Sequence

A removing party must comply with the following sequence: first, file a notice of removal in federal court; second, give written notice to adverse parties; third, file a copy of the notice in state court.  28 U.S.C. § 1446(d).  Onomatopoeia contends

---

[15] Lewis's third declaration—attached to CHL's reply in support of its motion to dismiss—is similarly flawed.  (Doc. 9-1).  The first page includes factual statements in numbered paragraphs, but the second is mostly blank.  (*Id.*).

CHL reversed this order of operation.   (Doc. 10 at 8-9).  However, as shown by the CM/ECF file stamp[16] on the notice of removal and the affidavit of CHL's counsel, CHL filed the notice of removal in this court on January 2, 2023, at 10:25 a.m.  (Doc. 14-3 at 2-3, 5; *see* Doc. 1 at 1).  CHL filed a copy of the notice in state court over an hour later.  (Doc. 14-3 at 3).  While the notice of removal bears a stamp indicating it was filed in this court on January 3, 2023, it reflects the date and time the Clerk of Court entered the pleading and assigned a case number; that action occurred the day after CHL removed because the courthouse was closed for a federal holiday on January 2, 2023.[17]  Accordingly, CHL followed the appropriate removal sequence.

### D.   Diversity Jurisdiction

Finally, Onomatopoeia contends diversity is lacking for two reasons: (1) application of the forum defendant rule; and (2) the parties' citizenships.  The court has already determined the citizenship of the parties.  As discussed above, the parties are completely diverse, and neither defendant is an Alabama citizen.[18]  Accordingly, Onomatopoeia's arguments regarding failure of diversity are without merit.

---

[16] The CM/ECF file stamp appears in blue ink, centered in the header of documents appearing in the record; it shows the date on which a party electronically files a pleading.

[17] The Clerk's file stamp appears in black ink at the top right-hand corner of the document.

[18] The court can ignore Stewart Title's citizenship because it is a nominal party.  *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 460-61 (1980) (the citizenship of nominal parties need not be considered in diversity analysis).  Nevertheless, it is clear Stewart Title is a Texas citizen only.

## III.   MOTION TO DISMISS

CHL's motion to dismiss challenges this court's personal jurisdiction under Rule 12(b)(2) of the *Federal Rules of Civil Procedure*.   "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). If the defendant challenges personal jurisdiction by submitting affidavit evidence, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.  *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002).

When the issue of personal jurisdiction is decided on the evidence, but without a discretionary hearing, a plaintiff demonstrates a prima facie case of personal jurisdiction by submitting evidence sufficient to defeat a motion made pursuant to Rule 50(a) of the *Federal Rules of Civil Procedure*.  *See Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1317 (11th Cir. 2006).   When taken on the papers, a court construes the complaint's allegations as true if they are uncontroverted by affidavits or deposition testimony, *id.* at 1317, and where there are conflicts, "construe[s] all reasonable inferences in favor of the plaintiffs," *Meier,* 288 F.3d at 1269.   However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, "the plaintiff is then required to substantiate the jurisdictional

allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint." *Mercantile Cap., LP v. Fed. Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys*., 218 F.3d 1247, 1249 (11th Cir. 2000)).

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *See Cable/Home Comm'cn Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir.1990). First, the jurisdictional question under the state long-arm statute is considered. *Id.* If there is a basis for the assertion of personal jurisdiction under the state statute, that is, minimum contacts with the forum, the next determination is whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *see also Cable/Home,* 902 F.2d at 855. Here, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

There are two types of personal jurisdiction: specific and general. Specific jurisdiction applies where a defendant's contacts with the forum state arise from or are related to the claims asserted. *See Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984). Here, CHL's motion characterizes the complaint

as asserting specific jurisdiction, noting it does not have the type of contacts with Alabama which would give rise to general jurisdiction. (Doc. 4 at 7).[19] Onomatopoeia does not explicitly concede general jurisdiction, but it does not present evidence to overcome CHL's showing. Moreover, Onomatopoeia contends personal jurisdiction over CHL is appropriate given its communications and negotiations regarding the real estate transaction—arguments for exercise of specific jurisdiction. In any event, the court finds CHL is not subject to general jurisdiction in Alabama.

Regarding specific jurisdiction, a non-resident defendant has a protected liberty interest in being free from judgments entered in a forum with which the defendant "has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (defendant must have "fair warning" that he may be subject to suit in the forum). Specific jurisdiction exists where a defendant's contacts with the forum state: (1) are related to the plaintiff's claims or gave rise to the lawsuit; (2) "involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum"; and (3) are "such that the defendant should reasonably anticipate being haled into court there." *Id.* at 474-75 (quotation marks omitted). Even if the defendant's

---

[19] CHL has submitted evidence showing: (1) it does business primarily in California, where it is headquartered; (2) it is not an Alabama citizen; (3) none of its partners or agents are Alabama residents; and (4) it owns no property in Alabama. (Doc. 14-1 at 3).

contacts satisfy the foregoing tests, the court should only exercise jurisdiction if it would not offend "traditional notions of fair play and substantial justice." *Id.* at 486.

Here, the Amended Complaint generally alleges: (1) a "substantial amount" of the work and labor for the real estate transaction occurred in Jefferson County; (2) "some" of the alleged transactions, acts, and omissions occurred here; and (3) all of the legal work "made the basis of this complaint" took place here. (Doc. 1-1 at 51).[20] CHL has objected to personal jurisdiction, submitting the Fourth Declaration of Craig Lewis to show CHL's lack of contacts with Alabama, including that neither he nor CHL: (1) are located or reside in Alabama; (2) have any direct contacts with Alabama; (3) traveled to Alabama to negotiate the Sales Contract; (4) own any Alabama property; (5) have ever held any financial accounts in Alabama; (6) have ever had an Alabama telephone listing; (7) paid taxes here; (8) have any interest in the location of Plaintiff's corporate office or its agents. (Doc. 14-1 at 3-4). Lewis also declares that no CHL agents reside in Alabama or traveled there to negotiate, execute, or perform the Sales Agreement. (*Id.*). Further, Lewis declares CHL expected all actions taken regarding the Arkansas property would take place in Arkansas or by the parties in their respective home venues. (*Id.* at 4).

---

[20] The Amended Complaint also makes conclusory allegations that CHL "on information and belief, does business in the State of Alabama and has sufficient contacts to the State of Alabama to be subject to" personal jurisdiction here. (Doc. 1-1 at 51). These are allegations of general jurisdiction, which the court has already determined is not present here.

Lewis's declaration includes specific averments sufficient to overcome the Amended Complaint's conclusory allegations of CHL's Alabama contacts. Accordingly, the burden shifts back to Onomatopoeia to show this court's personal jurisdiction over CHL.  *See Meier,* 288 F.3d at 1269.  To that end, Onomatopoeia relies on email communications Lewis sent to Onomatopoeia's agent—an Alabama resident—as well as provisions in the Sales Contract: (1) providing for Onomatopoeia's payment of a commission to both parties' agents; (2) allowing Stewart Title to interplead any disputed escrow funds; and (3) stating " . . . SOME OF THE MEMBERS OF [CHL] ARE LICENSED REALTORS IN THE STATE OF ALABAMA."  (Doc. 8 at 5-6; *see* Doc. 8-2 at 2).

Here, CHL's contacts with Alabama relate to the claims asserted in this lawsuit, satisfying the first part of the specific jurisdiction test.  However, none of these contacts constitute CHL's purposeful availment to the privilege of conducting activities in Alabama.  A non-forum defendant can purposefully avail itself by creating "continuing obligations" within the forum.   *Id*. at 476.  But merely contracting with an Alabama entity does not constitute purposeful availment.  *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 811 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 479); *Homtex, Inc. v. Calamity Jane's Funk & Junk, Inc.*, No. 19-009-LCB, 2020 WL 136857, at *5 (N.D. Ala. Jan. 13, 2020). Indeed, as another court sitting in this district has explained:

. . . the Eleventh Circuit has found a contractual relationship insufficient where the contract was for a one-time performance, negotiations were conducted in part within the forum, in part in another country, and in part by fax, and the contract included an English choice-of-law provision. *Sea Lift, Inc.*, 792 F.2d at 994. In a more recent case, the Eleventh Circuit found negotiation of a contract insufficient to confer personal jurisdiction where the non-forum defendant solicited the forum plaintiff for a one-shot operation, the defendant's duties were to be performed outside the forum, the non-forum defendant did not have any physical presence in the forum, and the contract's choice-of-law provision chose a different forum's law.

*9Rooftops Mktg., LLC v. SW Safety Sols., Inc.*, No. 20-02001-ACA, 2021 WL 3171903, at *3 (N.D. Ala. July 27, 2021) (citing *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir. 1986), and *PVC Windoors*, 598 F.3d at 811-12.

Onomatopoeia has produced emails between Craig Lewis (on behalf of CHL) and STREAM Capital Partners, which is located in Birmingham and served as Onomatopoeia's agent.   (Doc. 8-3; Doc. 8-4).  This material consists of four emails Lewis sent to STREAM between June 28, 2022, and August 15, 2022; they concern delays in receiving an appraisal and the associated need to extend the escrow period. (*Id.*).   However, these emails do not constitute CHL's personal availment to Alabama.  *9Rooftops*, 2021 WL 3171903, at *3; *see Walden v. Fiore,* 571 U.S 277, 285-86 (2014) (non-forum defendant's contact with plaintiff residing in forum state did not constitute purposeful availment); *Sea Lift, Inc.*, 792 F.2d at 994; *PVC Windoors*, 598 F.3d at 811-12; *see also Borg–Warner Acceptance Corp. v. Lovett &*

22

*Tharpe, Inc.*, 786 F.2d 1055, 1063 (11th Cir. 1986) (refusing to exercise jurisdiction where the primary contact involved an isolated purchase of goods manufactured in the forum under a contract negotiated outside of the forum).

Neither does the Sales Contract's provision for payment of a commission to an Alabama agent manifest CHL's personal availment to Alabama. *See Sea Lift, Inc.,* 792 F.2d at 994 ("The actual mailing of payments to the forum state has been held not to weigh heavily in [the purposeful availment] determination."). Similarly, the language in the Sales Contract allowing Stewart Title to interplead disputed escrow funds does not represent CHL's purposeful availment in Alabama. The Sales Contract does not include any choice of law provision or a forum selection clause, much less choices of Alabama law or an Alabama forum; nothing in the Sales Contract—including the provision specifically allowing Stewart Title[21] to interplead any disputed escrow funds—shows CHL purposefully availed itself to Alabama.[22] In any event, Stewart Title did not initiate this matter—Onomatopoeia did.[23]

That leaves the language in the Sales Agreement stating that some of CHL's

---

[21] Neither does Stewart Title's role as escrow agent provide a hook for personal jurisdiction here. As noted above, Stewart Title is a Texas corporation with its principal place of business in Texas.

[22] The result might be different if the real estate at issue were located in Alabama instead of Arkansas. *See Bowling v. Founders Title Co.*, 773 F.2d 1175, 1179 (11th Cir. 1985)

[23] Even if the foregoing evidence could somehow constitute CHL's purposeful availment, it does not demonstrate CHL should reasonably anticipate being haled into an Alabama court. *See 9Rooftops*, 2021 WL 3171903, at *3.

members are licensed Alabama realtors.  CHL has submitted Lewis's Fourth Declaration averring that neither he nor any other partner or owner of CHL holds an Alabama real estate license and that any contrary provision in the Sales Contract was made in error.  (Doc. 14-1 at 4-5).  CHL's briefing argues the language was "merely a holdover from a prior draft used by Plaintiff."  (Doc. 9 at 8).  That this language was included in error is supported by the fact that it refers to the "members" of CHL—a limited partnership that has partners, not members.

The court is spared the task of wrestling with this conflicting evidence under the Rule 12(b)(2) standard.  This is because, even accepting the language in the Sales Contract as true, it would not constitute CHL's personal availment here.[24]  Again, the object of the Sales Contract was real property located in Arkansas.  Accordingly, whether CHL had owners licensed as realtors in Alabama is irrelevant to the Arkansas real estate transaction at issue.  Even if having owners who hold Alabama real estate licenses could constitute CHL's purposeful availment here, it is hard to imagine how CHL could reasonably anticipate being haled into court in Alabama in this instance, which arose from an Arkansas real estate deal gone bad.  *See 9Rooftops*, 2021 WL 3171903, at *3.

The relevant evidence shows the foregoing were CHL's only potential

---

[24] Onomatopoeia does not contend that having a "member" who holds an Alabama law license subjects CHL to general jurisdiction in this state.  Moreover, the court is unaware of any authority holding that a realtor licensed to do business in Alabama is subject to general jurisdiction.

contacts with Alabama.  These are simply insufficient to subject CHL to personal jurisdiction here.  Accordingly, CHL's motion to dismiss will be granted.

## IV.   CONCLUSION

For all of the foregoing reasons: (1) Onomatopoeia's motion to remand and motion to strike are **DENIED** (Docs. 10, 11); and (2) CHL's motion to dismiss (Doc. 4) will be granted by separate order.

**DONE** this 29th day of September, 2023.

_Staci G. Cornelius_
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE